IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LACY REESE, as Special Administratrix of
the ESTATE OF DAVID LYNN REESE, deceased                    PLAINTIFF

v.                          Case No. 2:15-CV-02145

MICHELIN NORTH AMERICA, INC.;
FCA US LLC; and DISCOUNT TIRE COMPANY
OF TEXAS, INC.                                              DEFENDANTS

## OPINION AND ORDER

Before the Court is Defendants' motion to transfer this case to the Northern District of Texas and apply Texas law (Doc. 41), Plaintiff Lacy Reese's response in opposition (Doc. 43) and Defendants' reply (Doc. 44-1). For the following reasons, the Court finds that the motion (Doc. 41) should be DENIED in all respects.

**I.      Background**

On July 2, 2014, David Reese was driving home to Arkansas on U.S. Highway 83 in Jones County, Texas when he lost control of his 1999 Jeep Wrangler, was ejected from the vehicle, and died as a result. On June 22, 2015, Mr. Reese's widow, Lacy Reese, brought this action on his behalf alleging that a tire and the seatbelt restraint system equipped on the vehicle were each defectively designed and manufactured; defendants misrepresented material facts concerning their respective products; Defendants Michelin North America, Inc. ("MNA") and FCA US LLC ("FCA") breached their warranties; and Defendants were negligent.

MNA, which is responsible for the design and manufacture of the tire at issue, is a New York Corporation with its principal place of business in South Carolina. FCA, which is responsible for the design and manufacture of the seatbelt restraint system at issue, is a Delaware limited

liability company with its principal place of business in Michigan.[1]  Defendant Discount Tire Company of Texas, Inc. ("Discount Tire") is a Texas corporation with its principal place of business in Texas and its registered headquarters in Arizona.  The Reeses resided in Logan County, Arkansas before Mr. Reese's death, and Ms. Reese has continued to live there ever since.  This action was originally filed in the Logan County, Arkansas Circuit Court, and subsequently removed to this Court on July 28, 2015.  The defendants now move for the Court to transfer this action to the United States District Court for the Northern District of Texas and to apply Texas substantive law.  Although Defendants filed a single motion combining the two issues, the Court will address the requests separately as different standards apply.

## II.      Request to Transfer Venue

### A.      Legal Standard

The change of venue statute, 28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The Eighth Circuit has "declined to offer an 'exhaustive list of specific factors to consider' in making the transfer decision." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (quoting *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997)).  However, in addition to considering the three general categories of factors contemplated by the statutory language—(1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice—the Eighth Circuit has instructed district courts to "weigh any 'case-

---

[1] FCA is a wholly owned subsidiary of FCA North America Holdings LLC, also a Delaware Corporation but with a principal place of business in New York.  FCA North America Holdings LLC is a wholly owned subsidiary of Fiat Chrysler Automobiles N.V., a publicly traded company formed in the Netherlands with its principal place of business in London, England.

specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Terra Int'l*, 119 F.3d at 691)). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra*, 119 F.3d at 695 (also noting that forum selection clauses may shift the burden of proof) (citations omitted). However, the extent of that deference may depend on the plaintiff's actual connection to the forum chosen, rather than the simple fact that the forum was indeed chosen. *See in re Apple*, 602 F.3d at 913 ("[A] foreign plaintiff's choice of forum is entitled to substantially less deference. We have never said that a choice of forum supported only by the fact that it was chosen, in and of itself, does anything more than shift the burden of proof to a movant seeking transfer under § 1404(a)." (citations and internal quotations omitted)).

**B.    Analysis**

Defendants argue that the Northern District of Texas is the more appropriate forum because that is where the accident giving rise to this lawsuit occurred, and that it is more convenient because all of the witnesses and evidence related to that accident are also located in the Northern District of Texas. Defendants also argue that Arkansas's only connection to the case is that David Reese lived in Arkansas, and Lacy Reese and one passenger in the accident giving rise to the lawsuit both still reside in Arkansas. In response, Reese argues that Defendants exaggerate the importance of the accident's location considering that the allegations in this case center primarily on whether the tire and seatbelt restraint system on Mr. Reese's vehicle were defective.

The Court first notes that because the accident giving rise to this lawsuit occurred in Jones County, Texas, this case meets one threshold requirement for transfer under 28 U.S.C. § 1404(a) in that it could have been filed in the Northern District of Texas. *See* 28 U.S.C. § 1391 ("A civil

3

action may be brought in . . . a judicial district in which a substantial part of the events . . . giving rise to the claim occurred[.]") Therefore, the Court need only address whether transfer to that forum is more convenient, in the interests of justice, and otherwise warranted considering any other case-specific factors in the context of convenience and fairness. The Court will address each in turn.

1.  **Balance of Convenience**

While there is no definitive list of factors to consider in analyzing convenience, the Eighth Circuit has found it appropriate to consider "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law" in making a final determination as to convenience. *Terra*, 119 F.3d at 696. Both parties address the issue by referring to these factors specifically.

The only party that may find it more convenient to litigate this case in the Northern District of Texas is Discount Tire, whose principle place of business is in Texas. However, Discount Tire has its registered headquarters in Arizona, and its counsel for this action is based in Little Rock, Arkansas. So any practical increase in convenience to Discount Tire in its capacity as a defendant, were this action to be moved to Texas, is tenuous. This forum is undoubtedly more convenient to Ms. Reese, as she resides in the Western District of Arkansas. The other defendants, MNA and FCA, have no formal relationship with either state other than through their business with Texas and Arkansas customers. Counsel for those defendants will also have to travel significantly regardless of whether the case is litigated in Texas or Arkansas. Ultimately, as to convenience to the parties, a transfer to the Northern District of Texas would merely shift guaranteed convenience

for Ms. Reese to a possibility of increased convenience to one of three defendants. "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Terra*, 119 F.3d at 696–697 (quotation omitted). This factor therefore weighs in favor of not transferring the action.

Defendants also argue that transfer is warranted in order to increase convenience to witnesses. Defendants contend that nearly all of the known fact witnesses reside in the Northern District of Texas, and that they would not be subject to a subpoena to testify in this Court. However, Defendants' arguments refer mostly to witnesses to the accident that caused Mr. Reese's death. The Court agrees with Ms. Reese that Defendants exaggerate the relevance of these fact witnesses and the necessity of their appearing in person to testify. This is primarily a product-liability case, and all of the negligent behavior alleged, other than that possibly attributable to Discount Tire, occurred outside of Texas. The primary issues in this case—determining whether the tire and seatbelt restraint system were defective, will involve little evidence from the State of Texas or Texas-based eyewitnesses. Significant inquiry into the circumstances of the accident in this case is not necessary. Defendants have otherwise failed to show how any witnesses to the defectiveness of the products at issue will be afforded greater convenience by a transfer to the Northern District of Texas.[2] Therefore, this factor weighs against transfer.

In sum, the Court finds that the balance of convenience weighs against transfer.

### 2. Interests of Justice

The Eighth Circuit has set out a non-exhaustive list of factors to consider in determining

---

[2] The primary reasons that FCA is even able to make a credible argument that transfer could be warranted is that one of three defendants has its principle place of business in Texas and because the alleged defect manifested while Mr. Reese was driving through the Northern District of Texas. The Court notes that the two districts are adjacent. If Mr. Reese's vehicle had crashed even immediately after crossing into Arkansas, the case for transfer would be all the more weak.

5

whether the interests of justice weigh in favor of a transfer, which includes: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra*, 119 F.3d at 696. Defendants point to three of these factors in arguing that a transfer is warranted.

Defendants first argue that the parties' comparative costs of litigation weigh in favor of a transfer because any Texas-based witnesses who choose to travel would face great expense. The Court has already declined to transfer this case based on the increased convenience to any Texas-based witnesses, and the same rationale applies here. Moreover, any witnesses who are outside the subpoena power will not be compelled to travel at all, and deposition testimony may be used instead. Regardless, to the extent litigating in this Court increases the costs to Defendants, Defendants are better suited to bear those costs than Ms. Reese would be were she compelled to litigate her case in the Northern District of Texas.

Defendants next argue that Reese's choice of forum should not be afforded the deference typically due to a plaintiff because "all of the underlying facts arose in Texas, and the overwhelming majority of relevant witnesses and evidence is in Texas." (Doc. 40, p. 7). As noted above, Defendants' contention that all underlying facts arose in Texas, and that the majority of witnesses and evidence are in Texas is exaggerated and not a correct characterization of this case. The design and manufacture of the products at issue occurred outside of Texas, and a resolution as to the alleged defective design and manufacture of those products are the primary issues to be resolved in this case.

Defendants also argue in their reply that this Court should follow the reasoning in *Troutman v. Cooper Tire & Rubber Co.*, 2010 WL 10950559 (W.D. Ark. April 15, 2010).

6

*Troutman* is readily distinguishable. *Troutman* involved several plaintiffs suing Cooper Tire & Rubber Company ("Cooper Tire") and Ford Motor Company for injuries they sustained in an automobile accident allegedly caused by defects in a seatbelt restraint system and a tire installed on their Ford Explorer. Plaintiffs were all residents of Louisiana and the accident giving rise to the suit occurred in the Western District of Louisiana. Each Defendant was domiciled outside of both Louisiana and Arkansas; however, the subject tire was manufactured in Cooper Tire's Texarkana, Arkansas plant, which is why Plaintiffs filed their case in the Western District of Arkansas. In an unpublished opinion, the Court found that transfer to the Western District of Louisiana was warranted because the case had no connections to Arkansas other than the alleged defective tire being manufactured in a Texarkana, Arkansas plant. The Court specifically noted (1) the *Troutman* plaintiffs were due less deference because none resided in the chosen forum; (2) "providing compensation to the injured parties is a primary concern of the state in which such parties are domiciled[;]" and (3) Louisiana's court was better suited to apply the unique system of civil law applicable to the case. *Troutman*, 2010 WL 10950559, at *2. While there are striking factual similarities between this case and *Troutman*, the reasons relied on for transfer in that case actually weigh against transfer in this case. Primarily, Ms. Reese's choice of forum is entitled to significant deference. Ms. Reese chose to file this case in Arkansas because she has resided in Arkansas with her special needs son during all relevant time periods, as did Mr. Reese before his death. As such, Arkansas also has an interest in providing Ms. Reese an avenue for recourse in her home state. Finally, the Court here is not faced with applying Louisiana's unique civil law.

Defendants' last argument that transfer is in the interests of justice is essentially that the Court should transfer this case to the Northern District of Texas because Texas law applies. As set out below, Arkansas law will be applied in this case. The choice-of-law factor therefore weighs

in favor of having the case heard in Arkansas. Even assuming that Texas law applied, that alone would not be sufficient to warrant transfer considering all other factors weigh against transfer.

Accordingly, the Court finds that Defendants' motion should be denied insofar as it seeks to transfer this action to the Northern District of Texas.

### III.     Request to Apply Texas Law

####     A.     Legal Standard

To determine which state substantive law applies in a federal diversity case, the Court applies the conflict-of-law principles of the state where the Court sits. *Schwan's Sales Enterprises, Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 596 (8th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1027 (8th Cir. 2003)). Therefore, the Court will apply Arkansas conflict-of-law principles in determining whether Texas or Arkansas substantive law applies.

In Arkansas, courts first consider the doctrine of *lex loci delicti*, which requires deciding which state has the most significant relationship to the parties and the issues. *Lane v. Celadon Trucking, Inc.*, 543 F.3d 1005, 1010 (8th Cir. 2008) (citing *Ganey v. Kawasaki Motors Corp.*, 234 S.W.3d 838, 846 (Ark. 2006)). The Court then considers Dr. Robert Leflar's five choice-influencing factors initially adopted in *Wallis v. Mrs. Smith's Pie Co.*, 550 S.W.2d 453 (Ark. 1977). *See Ganey v. Kawasaki Motors Corp.*, 234 S.W.3d 838, 846 (Ark. 2006) (citing *Schubert v. Target Stores, Inc.*, 201 S.W.3d 917, 921–22 (Ark. 2005)). Those five choice-influencing factors are: (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. *Wallis*, 550 S.W.2d at 456.

####     B.     Analysis

Defendants argue the doctrine of *lex loci delicti* clearly warrants applying Texas law because the accident giving rise to the suit occurred in Texas, and because the products alleged to be defective were sold and serviced in Texas. Reese concedes that the allegations against Discount Tire are most connected to Texas, but points out that the claims against all other defendants are based on actions that took place in Michigan, South Carolina, or Japan. Again, the Court agrees with Reese that Defendants exaggerate this case's connection to Texas. The majority of actions under scrutiny here—designing and manufacturing the seatbelt restraint system and tire—occurred outside of Texas and were done by parties having no direct relationship with Texas. In the Court's view, Texas's contacts, at least qualitatively, are no more significant than Arkansas or the states where the products at issue were designed and manufactured. The Court therefore declines to find that the doctrine of *lex loci delicti* warrants applying Texas substantive law.

The next step is to consider the five choice-influencing Leflar factors. The first factor is predictability of results, the purpose of which is to prevent forum shopping and ensure uniform results. *Miller v. Pilgrim's Pride Corp.*, 366 F.3d 672, 674 (8th Cir. 2004); *Gomez v. ITT Educ. Serv., Inc.*, 71 S.W.3d 542, 547 (Ark. 2002). "The predictability of results is not implicated when an action arises out of an accident." *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001); *see also Lee v. Overbay*, 2009 WL2386095, at *1 (W.D. Ark. July 31, 2009) ("In most tort cases, this factor is of little importance because automobile collisions and other accidents are unplanned and have no bearing on the injury.").[3] Such is the case here. The Court also finds that

---

[3] As noted in *Lee*, Dr. Leflar has also written that the state where a defendant is domiciled may have a greater interest in seeing its law applied if the vehicle was registered and insured in the same state, particularly because of the involvement of insurance companies and contracts made in that state. Although the subject vehicle was registered in Texas and one defendant, Discount Tire, is domiciled in Texas, the Court does not find Dr. Leflar's reasoning applicable here. This is not a typical car accident case that would entail litigation involving personal liability insurance policies nor are any specific contracts at issue such that Texas has a heightened interest in this case.

Defendants' allegation that Reese engaged in improper forum shopping is unfounded, as she had every right to file suit in her home state. Accordingly, this factor has no bearing in the analysis.

The second factor is maintenance of interstate and international order. The inquiry here focuses on whether free highway traffic between the states will be lessened or whether any state's sovereignty will be affected by the application of a state's law. *Schlemmer v. Fireman's Fund Ins. Co.*, 730 S.W.2d 217, 219 (Ark. 1987). This "factor is generally not implicated if the state whose law is to be applied has sufficient contacts with and interest in the facts and issues being litigated." *Hughes*, 250 F.3d at 620 (citation and internal quotations omitted). Because Reese is domiciled in Arkansas, the Court finds that Arkansas has sufficient contacts with and interest in the facts and issues being litigated. Accordingly, this factor has no bearing on the analysis.

The third factor is simplification of the judicial task. "A federal district court is faced almost daily with the task of applying some state's law other than that of the forum state[.]" *Hughes*, 250 F.3d at 620. The Court is equally capable of applying Texas or Arkansas law, so this factor has no bearing on the analysis.

The fourth factor is the advancement of the forum's governmental interest. Again, Defendants point to the contacts related to the automobile accident as supporting application of Texas law. Again, the contacts this case has with Texas are not significant in determining liability of Michelin and FCA, which will instead depend on the circumstances surrounding the design and manufacture of certain products—none of which occurred in Texas. The Eighth Circuit has also stated that, while "a state has at least some interest in protecting nonresidents from tortious acts committed within the state, . . . even then, courts have recognized that the state's interest is only slight and does not support application of its law to the litigation." *Hughes*, 250 F.3d at 621 (citing *Thornton v. Sea Quest, Inc.*, 999 F.Supp. 1219, 1223–24 (N.D. Ind. 1998) (noting that providing

compensation to an injured plaintiff is a primary concern of the state in which the plaintiff is domiciled)) (other citations omitted). Texas's greatest interest in this case comes by virtue of one of three defendants—Discount Tire—being domiciled and incorporated there. In that respect, however, Texas would be on an even footing with any state in which the other Defendants are domiciled. Ultimately, while several states may have some interest in this litigation, in the Court's view none trump Arkansas's by virtue of its interest in providing a remedy for Reese.

"The fifth and final factor suggests that a court ascertain which law is better, or in other words, which law makes good socio-economic sense for the time when the court speaks." *Hughes*, 250 F.3d at 621 (citations and internal quotations omitted). "Recognizing that states often have competing policy considerations for governing similar transactions or events in different manners such that the laws do not necessarily lend themselves to being labeled either better or worse, [the Eighth Circuit has] counseled that courts should refrain from pronouncing the better law when the other Leflar factors point decidedly toward the application of one state's law." *Lane v. Celadon Trucking, Inc.*, 543 F.3d 1005, 1011 (8th Cir. 2008) (quoting *Hughes*, 250 F.3d at 621)) (internal quotations omitted). However, "Leflar writes that when the forum state's law is less restrictive of a plaintiff's recovery, the forum state's law is regarded as being the 'better law.'" *Lee v. Overbey*, 2009 WL 2386095, at *2 (W.D. Ark. July 31, 2009) (citing Robert A. Leflar, *Conflict of Laws*, 28 Ark. L. Rev. 199, 213–14 (1974)). Similarly, "[w]hen confronted with a conflict over the measure of damages, an Arkansas court will most likely apply law from the state which imposes the least limits upon a plaintiff's recovery." *Id.* (citing Howard W. Brill, *Arkansas Law of Damages*, 1 Arkansas Law of Damages § 2:7 (5th Ed.) (citation omitted)).

Defendants contend that this fifth factor should have no bearing on the analysis because neither state's law is objectively better than the other; however, Reese points out three notable

11

differences in Arkansas and Texas law as would be applied to this case. First, Texas has a statute of repose which bars product liability actions premised on products sold more than 15 years before the action commenced. Tex. Civ. Prac. & Rem. Code Ann. § 16.012. The effect in the instant case would be to bar any recovery against FCA, as the Jeep containing the seatbelt restraint system was sold more than 15 years before the accident. Second, Texas law restricts recovery of punitive or exemplary damages, whereas Arkansas does not. *Compare* Tex. Civ. Prac. & Rem. Code Ann. § 41.008 *with Bayer Cropscience LP v. Schafer*, 385 S.W.3d 822, 831 (Ark. 2011) (finding limits on punitive damages unconstitutional). Third, Arkansas's wrongful death statute extends benefits to siblings of the decedent, whereas Texas's wrongful death statute does not. *Compare* Ark. Code Ann. § 16-62-102 *with* Tex. Civ. Prac. & Rem. Code Ann. § 71.004. Considering those differences and Arkansas's preference for using less restrictive laws in terms of a plaintiff's ability to recover, the Court finds that this factor weighs in favor of applying Arkansas substantive law.

Taking the doctrine of *lex loci delicti* and Dr. Leflar's five choice-influencing factors into account, the Court finds that the circumstances of this case weigh more in favor of applying Arkansas law in determining liability. Accordingly, Defendants' motion is denied insofar as it requests that the Court apply Texas substantive law.

**IV.   Conclusion**

IT IS THEREFORE ORDERED that Defendants' motion to transfer this case to the Northern District of Texas and apply Texas law (Doc. 41) is DENIED.

IT IS SO ORDERED this 24th day of March, 2016.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE